SUNSET TELEPHONE & TELEGRAPH CO. v. DAY et al.

(Circuit Court of Appeals, Ninth Circuit. October 8, 1895.)

No. 214.

1. INSTRUCTIONS TO JURY—ERROR CURED BY FINDING.

Plaintiffs sued defendant for the value of certain telephone poles, furnished by them upon a contract with defendant, and for $245 freight on certain material transported by them at defendant's request. Defendant claimed that a large part of the poles had been unlawfully cut by plaintiffs on the land of a third party, and did not belong to plaintiffs, who could not recover their value. It also claimed that other countercharges fully offset plaintiffs' claims, including the $245. The court instructed the jury that the question of title to the poles was the only one at issue, that if they found that any of the poles were cut on land of a third party they were to fix the value of the poles so cut, and, after deducting it from the contract price, find a verdict for the plaintiffs for the balance, and, if there was nothing left after making such deduction, and the other de-

ductions to which the defendants were entitled, they should find a verdict for not more than $245. The jury gave plaintiffs a verdict for $1,395. *Held* that, even if the instruction to find a verdict for $245 was error, it was rendered innocuous by the verdict, since the jury must have found that the deductions to which the defendant was entitled did not amount to a sufficient sum to cancel plaintiffs' claim.

2. EVIDENCE—HARMLESS ERROR.

Plaintiffs were permitted to give evidence of the price paid by them to persons from whom they claimed to have bought the poles. *Held* that, though such evidence was immaterial, its admission was harmless, the instructions given to the jury having clearly indicated that it was not to be considered as a measure of the value of the poles.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

This was an action by John S. Day and Michael Day against the Sunset Telephone & Telegraph Company to recover the value of certain poles. The plaintiffs recovered judgment in the circuit court. Defendant brings error. Affirmed.

The defendants in error, plaintiffs in the court below, sued plaintiff in error, defendant in the court below, to recover the sum of $5,717. For convenience we shall designate the parties, as they appear in the controversy in the court below, as plaintiffs and defendant. The cause of action, as stated in the complaint, is that defendant employed plaintiffs to furnish it, at San Pedro, Cal., 2,005 telephone poles at $3.20 each, and 226 poles at $6 each, to be paid for on delivery at the wharf at San Pedro, and that plaintiffs duly performed the contract; that the price of the poles amounted to $7,772, of which $2,300 has been paid, leaving due $5,472. The second cause of action is that plaintiffs, in accordance with agreement, "shipped and freighted," by the schooner Bangor,—the schooner which also carried the telephone poles,— 7,000 cross-arms for telephone poles, at the agreed price of 3½ cents for each cross-arm, making the sum of $245, which has not been paid.

The answer of defendant alleges that the contract with plaintiffs was in writing, and attached a copy to the answer, which is as follows:

"Agreement, entered into this 5th day of April, 1892, by and between Day Brothers, of Seattle, state of Washington, and Sunset Telephone and Telegraph Company, of San Francisco, a corporation existing under the laws of the state of California. Said Day Brothers hereby covenant and agree to furnish and deliver on wharf at San Pedro, California, and the said Sunset Telephone and Telegraph Company hereby agree to take and pay for, the following described poles at the prices herein stipulated: Two thousand (2,000) round telephone poles, thirty (30) feet long and not less than seven (7) inches in diameter at the smallest end. Price for the same to be three dollars and twenty cents ($3.20) per pole. Total, $6,400.00. Five hundred (500) round telephone poles, forty feet long, and not less than eight (8) inches in diameter at the smallest end. Price for same to be six dollars ($6.00) per pole. Total, $3,000.00. All of above poles to be of good, sound, live cedar, to be inspected and approved, prior to shipment, by an agent appointed by said Sunset Telephone and Telegraph Company before loading, and to be all delivered in good condition on said wharf, at San Pedro, Cal., by said Day Brothers, to be shipped within fifty (50) days after date. Each cargo to be paid as follows: Thirty (30) per cent. after inspection and loaded on vessel; forty-five (45) per cent. after delivery on wharf at San Pedro, Cal.; twenty-five (25) per cent. after completion of contract,—this per cent. to be retained in lieu of damages for noncompletion of contract. In addition to the above, said Day Brothers agree to take, on same vessel with cargo of poles, five thousand (5,000) cross-arms, to be landed on said wharf at San Pedro, Cal., with poles, at three and a half (3½) cents each. In witness whereof, the said parties have set their hands and seals this fifth day of April, 1892.                    Day Brothers. [Seal.]

"Accepted for Sunset Telephone Telegraph Co.,
                    "By Jno. Lawrence, Genl. Supt.
"Witness: A. J. Clark."

Defendant also admits the contract of affreightment of the cross-arms. As affirmative defense, it alleges: That, prior to the commencement of the action, it had fully paid plaintiffs; and, further, that plaintiffs did not perform their contract in this: that they did not furnish 500 poles 40 feet long, nor deliver said poles or the cross-arms at the wharf at San Pedro. That they did not ship the same within 50 days, and did not pay the freight or discharge the lien of the schooner Bangor for the carriage of said poles and cross-arms. That they only procured and shipped 2,000 poles 30 feet long, and 276 poles 40 feet long, representing and pretending that they were the owners of said poles. That about 1,000 of said poles were unlawfully cut and procured from the lands of the Puget Mill Company, a corporation, without its permission or authority, and mixed with the other poles shipped so that their identity could not be established. That, upon the arrival of the schooner at San Pedro, the Puget Mill Company did separately demand from the master of said schooner, and from the managing owner thereof, the possession of said poles, making separate demands, as a matter of precaution, for 1,200 poles; also, for 100 poles; and the said poles being mixed and confused with other poles constituting the cargo, so that the same could not be identified, or said demand complied with, the said company did likewise demand the whole of said cargo of poles. Each and every of said demands was refused by said master and by said owner. That there was due for freight $4,000, for which the schooner was entitled to a lien on the cargo, or so much thereof as was owned by plaintiffs. That there was no market for said poles and cross-arms at San Pedro, and defendant was, at said times, the only purchaser, and required forthwith the amount of poles and cross-arms embraced in said cargo, and if the same or any portion thereof were taken or held by proceedings at law to establish the title or right of the Puget Mill Company, or by proceedings in admiralty to establish the lien of the vessel for freight, the defendant would have been compelled to purchase the poles it required elsewhere, and the market for said poles would have been destroyed. That thereupon, and by reason of the aforesaid facts, and the emergency existing as aforesaid, the master and managing owner of said vessel did take charge of said cargo, and did sell the same to this defendant for the sum of $5,717, which is the amount which would have been due plaintiffs thereon under the contract (Exhibit A), had plaintiffs complied with the terms and conditions thereof, and paid the aforesaid sum of $4,000 freight thereon, and had plaintiffs likewise been the owners of the whole of said cargo. That the cargo was delivered to defendant in pursuance of said sale, and not otherwise, and in pursuance of said purchase it paid the said sum of $5,717 to the master and managing agent of said vessel. And defendant alleges, on information and belief, that the said master, upon proof and assurance of the title of the Puget Mill Company, paid it, out of the proceeds of said sale, $2,200, and the balance is retained to pay the freight on the cargo.

The case was tried by a jury, and the instructions of the court were as follows:

"This is a suit by the plaintiffs, the firm of Day Bros., to recover a balance claimed to be due for a cargo of telephone poles, which were furnished under a contract with the defendant, and delivered at San Pedro, in California. It is conceded that the contract on which the suit is founded was entered into; that the telephone poles were procured by the plaintiffs, and shipped to San Pedro, and the defendant has received them at San Pedro. A part of the purchase price agreed upon has been paid to the plaintiffs, and, in addition to that, the defendant has paid or settled for the freight which the plaintiffs were required to pay to the vessel for transporting the poles to San Pedro, leaving a balance on the contract price for the poles yet unpaid. In addition to the amount claimed for the poles, the contract provided that the vessel, which the plaintiffs were to charter to carry the poles, would take some cross-arms for the defendant, for which the defendant was to pay the plaintiffs. This vessel did carry some cross-arms, and for the transportation or freight on the cross-arms there is due the plaintiffs, from the defendant, $245. They are entitled to a verdict for that amount, at least, in this case. Now, whether there is any balance due them for the telephone poles depends upon your determination of the question whether the plaintiffs were the own-

ers of all of the timber which they put into that cargo. That is the question in this case for this jury to decide. The defendant has pleaded several defenses, but they are all either merged into this one, or abandoned on the trial. So that the question of title—ownership of the timbers—is the question to which the case is narrowed down, and that is the question which is to be submitted to this jury. If the plaintiffs, without the consent of the owner of the land where the timber grew, went upon the land, and cut it, and undertook, under their contract, to furnish that timber to the defendant, and the owner consequently had a right to claim that timber, as against them, or as against their vendees, then it would be the owner of the land that would have a legal claim against the defendant for the price or value of the timber, and not the plaintiffs; and for the value of so much timber as was unlawfully taken—if any of it was unlawfully taken—by the plaintiffs from the premises of the Puget Mill Company the defendant would have a right to claim, as it does claim, that a deduction should be made. You have heard the evidence and the arguments of counsel. Upon a fair consideration of the whole case, you are to determine whether this evidence establishes that any number of these poles were cut on the lands belonging to the Puget Mill Company; and if you so find, you will endeavor, from the evidence, to fix the value of so much of the timber as was thus taken from the Puget Mill Company's land, and deduct it from the whole contract price; and if there is yet a balance, after making such deduction, if there is yet a balance due the plaintiffs, award them a verdict for that balance. If there is nothing over and above that deduction, and the credit that has been paid, and the money that has been paid to the plaintiffs, still coming to the plaintiffs, you will not award the plaintiffs any more than $245. Now this claim that the timber was cut on the land of the Puget Mill Company is an affirmative defense, set up by the defendant, and it is therefore incumbent upon the defendant to establish, by at least a fair preponderance of the evidence, that the timber was cut on the land of the Puget Mill Company,—some of the very timber that went into this very cargo. The defendant cannot, in this case, claim anything on account of timber cut at any other time, or any other timber, if any was ever cut by Day Bros., unless it was part of this same cargo. The defendant is not required to identify any particular sticks of timber of that cargo, but it is incumbent upon the defendant to prove that some of the timber that went into that cargo was timber taken from the Puget Mill Company's land, and to fix, by the evidence, upon that timber,—that is, the timber taken from the Puget Mill Company's land, and put into that cargo. If it should appear to you from the evidence that some timber was taken from the Puget Mill Company's land and included in this cargo, and the evidence is too indefinite to enable you to determine how much, or the value of it, you can only allow a nominal sum to be deducted from the contract price of the timber. You are exclusive judges on the question of the evidence involved in the case, and it is your province to weigh the evidence, and determine its value, and pass upon the credibility of the witnesses, and determine, from a fair consideration of the evidence in the case, what the truth is."

E. C. Hughes, for plaintiff in error.

Thompson, Edsen & Humphries, for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

McKENNA, Circuit Judge, after reciting the pleadings and instructions as above, delivered the following opinion:

The main controversy between the parties is as to the title of the telephone poles, and the testimony was addressed to this; and, being conflicting, the verdict of the jury cannot be disturbed, unless there was error in the rulings, either in admitting or rejecting testimony, or in the instructions. Defendant claims both: In the former, inasmuch as evidence was admitted of the price paid by plain-

tiffs to persons from whom they claimed it purchased poles. In the second, by giving the following instructions:

"In addition to the amount claimed for the poles, the contract provided that the vessel, which the plaintiffs were to charter to carry the poles, would take some cross-arms for the defendant, for which the defendant was to pay the plaintiffs. This vessel did carry some cross-arms, and for the transportation or freight on the cross-arms there is due the plaintiffs, from the defendant, $245. They are entitled to a verdict for that amount, at least, in this case."

"If the plaintiffs, without the consent of the owner of the land where the timber grew, went upon the land, and cut it, and undertook, under their contract, to furnish that timber to the defendant, and the owner consequently had a right to claim that timber, as against them, or as against their vendees, then it would be the owner of the land that would have a legal claim against the defendant for the price or value of the timber, and not the plaintiffs; and for the value of so much timber as was unlawfully taken * * * by the plaintiffs from the premises. of the Puget Mill Company, the defendants would have a right to claim, as they do claim, that a deduction should be made. You have heard the evidence and the arguments of counsel. On a fair consideration of the whole case, you are to determine whether this evidence establishes that any number of these poles were cut on the lands belonging to the Puget Mill Company; and if you so find, you will endeavor, from the evidence, to fix the value of so much of the timber as was thus taken from the Puget Mill Company's land, and deduct it from the whole contract price; and if there is yet a balance, after making such deduction, if there is yet a balance due the plaintiffs, award them a verdict for that balance. If there is nothing over and above that deduction, and the credit that has been paid, and the money that has been paid to the plaintiffs, still coming to the plaintiffs, you will not award the plaintiffs any more than $245."

It may be conceded that the price of the poles purchased by defendant was immaterial, but it does not seem to have been prejudicial. The testimony could only have been introduced to show good faith, and must have been so understood. The jury could not have understood it, as charged by defendant, as permitting them to consider it as determining the value of the timber claimed by the Puget Mill Company. The value of that, for the purposes of the case, was fixed by the contract, and the instructions, with sufficient clearness, indicated this. In passing on the instructions it must be borne in mind that the defendant's view was that plaintiffs were not entitled to recover for timber cut on the land of the Puget Mill Company. The court adopted this view. . It said, after giving the instruction supra which is objected to:

"The defendant has pleaded several defenses, but they are all either merged into this one, or abandoned on the trial. So that the question of title—ownership of the timbers—is the question to which the case is narrowed down, and that is the question which is to be submitted to this jury."

And, after stating that the owner of the land where the timber grew was the owner of the latter, the court, continuing, said:

"And for the value of so much timber as was unlawfully taken—if any of it was unlawfully taken—by the plaintiffs from the premises of the Puget Mill Company the defendant would have a right to claim, as they do claim, that a deduction should be made. You have heard the evidence and the arguments of counsel. Upon a fair consideration of the whole case, you are to determine whether this evidence establishes that any number of these poles were cut on the lands belonging to the Puget Mill Company; and if you so find, you will endeavor, from the evidence, to fix the value of so much of the timber as was thus taken from the Puget Mill Company's land, and deduct it from the whole contract price; and if there is yet a balance, after

making such deduction, if there is yet a balance due the plaintiffs, award them a verdict for that balance. If there is nothing over and above that deduction, and the credit that has been paid, and the money that has been paid to the plaintiffs, still coming to the plaintiffs, you will not award the plaintiffs any more than $245."

There could be no misunderstanding of this. The items of credit or deduction from plaintiffs' claim which could arise from their nonownership of any of the timber, the jury was instructed, the defendant was entitled to. Even, therefore, if the instruction as to the $245 freight charge on the cross-arms was error, the finding of the jury made it innocuous. The plaintiffs were entitled to have the $245 estimated in the account between them and defendant. The defendant did not deny this, but contended that it and other claims of plaintiffs were canceled by items of countercharge. The jury found against the contention. If it had found a verdict only for $245, the instruction might have been injurious. In such case, it could be said that the judgment of the jury was constrained by the instruction of the court. But the verdict was for $1,395.22.

To the second instruction objected to, the criticism of defendant is not justified. It is clear, when all the instructions and the contentions of the parties are considered, that the price or value, as expressed, meant the price or value according to the contract, and as timber, not, as objected by defendant, as stumpage, or value by some other standard.

The defendant also assigns as error the action of the court in denying it a new trial. This is not reviewable in this court on writ of error. There being no error in the record prejudicial to defendant, the judgment is affirmed.